# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 23-235V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |
| DEBBIE NEASE BOHANNON, *as mother of B.B.*, | * * * * | Chief Special Master Corcoran |
| Petitioner, | * * * | Filed: September 12, 2025 |
| v. | * * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * * | |
| Respondent. | * * * | |
| * * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Lisa A. Roquemore,* Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for Petitioner.

*Mark K. Hellie*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION GRANTING IN PART MOTION FOR
### FINAL AWARD OF ATTORNEY'S FEES AND COSTS [1]

On February 16, 2023, Debbie Nease Bohannon, on behalf of her son, B.B., filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petition (ECF No. 1) ("Pet.") at 1. Petitioner alleged that B.B.'s May 14, 2021 receipt of a tetanus, diphtheria, and acellular pertussis ("Tdap") vaccine, "by itself or in concert with the [meningococcal conjugate] vaccine" also administered that same day, caused B.B. to develop type 1 diabetes mellitus ("T1DM"). Pet. at 4. After reviewing the parties' arguments and filings, I

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

1

denied entitlement. *Bohannon v. Sec'y of Health & Hum. Servs.*, No. 23-235V, 2025 WL 413454, at *1 (Fed. Cl. Spec. Mstr. Jan. 2, 2025). That determination was not appealed.

Petitioner has now filed a motion for a final award of attorney's fees and costs. Motion, dated May 28, 2025 (ECF No. 33) ("Mot."). This is Petitioner's sole fees and costs request. Petitioner requests **$122,404.37** in attorney's fees and costs (reflecting $111,754.70 in attorney's fees, plus $10,649.67 in costs) for the work performed by Lisa A. Roquemore at Law Office of Lisa A. Roquemore. Mot. at 2; ECF Nos. 33-2 to 33-9. Respondent reacted to the present fees request on June 11, 2025. *See* Response, dated June 11, 2025 (ECF No. 34) ("Resp."). Respondent defers to my judgment as to reasonable basis and the calculation of the amount to be awarded. Resp. at 2–3. Petitioner did not file a reply.

For the reasons set forth below, I hereby **GRANT** in part Petitioner's motion, awarding fees and costs in the amount of **$88,709.96**.

**I.     Reasonable Basis is Met**

Although the Vaccine Act only guarantees a fees award to successful petitioners, a special master may also award fees and costs in an unsuccessful case if: (1) the "petition was brought in good faith"; and (2) "there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). I have in prior decisions set forth at length the criteria to be applied when determining if a claim possessed "reasonable basis" sufficient for a fees award. *See, e.g.*, *Sterling v. Sec'y of Health & Hum. Servs.*, No. 16-551V, 2020 WL 549443, at *4 (Fed. Cl. Spec. Mstr. Jan. 3, 2020). Importantly, establishing reasonable basis does not *automatically* entitle an unsuccessful claimant to fees, but is instead a threshold obligation; fees can still thereafter be limited if unreasonable, or even denied entirely.

A claim's reasonable basis must be demonstrated through some objective evidentiary showing. *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) (citing *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017)). This objective inquiry is focused on the claim—counsel's conduct is irrelevant (although it may bulwark good faith). *Simmons*, 875 F.3d at 635. In addition, reasonable basis inquiries are not static—they evaluate not only what was known at the time the petition was filed, but also take into account what is learned about the evidentiary support for the claim as the matter progresses. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994) (upholding the finding that a reasonable basis for petitioners' claims ceased to exist once they had reviewed their expert's opinion, which consisted entirely of unsupported speculation). As a result, a claim can "lose" reasonable basis over time.

The standard for finding the existence of reasonable basis is lesser (and thus inherently easier to satisfy) than the preponderant standard applied when assessing entitlement, as cases that

fail can still have sufficient objective grounding for a fees award. *Braun v. Sec'y of Health & Hum. Servs.*, 144 Fed. Cl. 72, 77 (2019). The Court of Federal Claims has affirmed that "[r]easonable basis is a standard that petitioners, at least generally, meet by submitting evidence." *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 287 (Fed. Cl. 2014) (internal quotations omitted) (affirming special master). The factual basis and medical support for the claim is among the evidence that should be considered. *Carter v. Sec'y of Health & Hum. Servs.*, 132 Fed. Cl. 372, 378 (Fed. Cl. 2017). Under the Vaccine Act, special masters have "maximum discretion" in applying the reasonable basis standard. *See, e.g.*, *Silva v. Sec'y of Health & Hum. Servs.*, 108 Fed. Cl. 401, 401–02 (Fed. Cl. 2012).

Although Petitioner's claim was ultimately unsuccessful, I find that this case was brought in good faith, and there was sufficient objective basis to entitle him to a reasonable fees and costs award—albeit *only barely*. Despite years of Program case law standing for the proposition that covered vaccines do not likely cause T1DM, Petitioner opted to pursue this claim. I afforded Petitioner the opportunity to demonstrate what *new* scientific/medical evidence or facts would support causation in this case, despite comparable claims failing so many times before. But Petitioner was unable to substantiate her theory with any such evidence.

Accordingly, this claim was facially quite thin—even *transparently* so—and its weakness should have been evident to counsel at the outset. Experienced counsel should not "take a flyer" on every claim that comes their way, attempting to see how far they can get with it, but should instead exercise professional judgment in what claims are meritorious (versus those that rely on *post hoc ergo propter hoc* level of reasoning). That did not occur here. At the same time, however, the causation theory embraced was not completely congruent with what had been considered in prior cases, and I have already noted that I was prepared to pay some reasonable fees incurred in advancing the matter. *Bohannon*, 2025 WL 413454, at *27. Thus (and in light of the exceedingly lenient standard that governs reasonable basis determinations), a final award of fees and costs in this matter is permissible—although the total amount to be awarded is subject to modification, as discussed below.

## II.   Calculation of Fees

### A.   Hourly Rate

Only "reasonable" fees or costs may be awarded in the Program. Determining the appropriate amount of the fees award is a two-part process. The first part involves application of the lodestar method—"multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343, 1347–48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down to take relevant factors into consideration. *Id.* at

3

1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensely v. Eckerhart*, 461 U.S. 424, 429–37 (1983).

An attorney's reasonable hourly rate is determined by the "forum rule," which bases the proper hourly rate to be awarded on the forum in which the relevant court sits (Washington, D.C., for Vaccine Act cases), *except* where an attorney's work was not performed in the forum and there is a substantial difference in rates (the so-called "*Davis* exception"). *Avera*, 515 F.3d at 1348 (citing *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency*, 169 F.3d 755, 758 (D.C. Cir. 1999)). A 2015 decision established the hourly rate ranges for attorneys with different levels of experience who are entitled to the forum rate in the Vaccine Program. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09-293V, 20115 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015).

Petitioner requests the following rates for her attorney, based on the years work was performed:

|  | **2021** | **2022** | **2023** | **2024** | **2025** |
|---|---|---|---|---|---|
| **Lisa A. Roquemore (Attorney)** | $ 447.00 | $ 475.00 | $ 475.00 | $ 475.00 | $ 475.00 |
| **Paralegal** | $139.00 | $139.00 | $139.00 | $139.00 | $139.00 |

Law Office of Lisa A. Roquemore Invoices, filed as Ex. 3 (ECF No. 33-2).

Ms. Roquemore practices in Southern California—a jurisdiction that has been deemed "in forum," and thus entitling her to rates commensurate with what was established in *McCulloch*. *See Davis v. Sec'y of Health & Hum. Servs.*, No. 14-978V, 2017 WL 656304, at *2 (Fed. Cl. Spec. MStr. Jan. 23, 2017). The requested rates are also mostly consistent with what has previously been awarded for Ms. Roquemore's time, in accordance with the Office of Special Master's fee schedule.[3] *Basdakis v. Sec'y of Health & Hum. Servs.*, No. 20-1158V, 2025 WL 455394, at *2 (Fed. Cl. Jan. 16, 2025); *Lancaster v. Sec'y of Health & Hum. Servs.*, No. 19-1546V, 2023 WL 5798010 (Fed. Cl. Spec. Mstr. July 17, 2023).

However, Ms. Roquemore's requested 2022 rate requires some scrutiny. From January 2022 through September 2022, Ms. Roquemore charged an hourly rate of $447 (consistent with her 2021 rate). She thereafter appears to have raised her hourly rate to $475 an hour in October 2022 and continued to charge at that rate through the end of that year—reflecting a mid-year increase of $28.00. ECF No. 33-2 at 10–27.

---

[3] OSM Attorneys' Forum Hourly Rate Fee Schedule, https://www.uscfc.uscourts.gov/sites/cfc/files/Attorneys%27%20Forum%20Rate%20Fee%20Schedule%202025.pdf (last visited Aug. 29, 2025).

Attorneys may have sound business reasons for changing rates in the midst of a single calendar year. In addition, the size of the increase is not per se objectionable. But it is not the practice of the OSM to afford mid-year rate increases to attorneys under any circumstances. Accordingly, I reduce Ms. Roquemore's rate to $447.00 per hour all time billed in 2022. This results in a reduction of attorney's fees to be awarded of **$168.00**.[4] All other proposed rates will be applied herein.

### B.    Adjustments to Time Devoted to the Matter

I have reviewed the billing records submitted with petitioner's request, and generally note that *far* more time was billed to this matter (especially since it was not *ever* likely to succeed) than warranted. (ECF No. 32-2). Incredibly, Ms. Roquemore worked on the matter for *eighteen months* (measured from the date Petitioner retained her) before filing the Petition. ECF No. 33-2 at 1–12. During that timeframe, Ms. Roquemore and her paralegal billed **$44,184.00** in fees—roughly a third of the entire fees for this case. ECF No. 33-2 at 1–11. She then devoted roughly ***forty-eight*** billable hours to researching, drafting, discussing, and editing Petitioner's Response to Order to Show Cause. *Id.* at 36–40. Yet that document hardly at all met the moment, failing to show in any way what recent scientific discoveries or studies made it more likely than any time prior in the Program's 35-plus year history that T1DM could be vaccine-caused.

Also relevant to the disposition of this fees motion is the fact that Ms. Roquemore has a history of excessive billing in Program cases. Previous decisions by the special masters have commented on the amount of unnecessary billing she incurs for excessive client communications; completing junior-level, paralegal-like work or administrative tasks at a full attorney rate; and for devoting attorney time to other "misplaced" efforts. *See, e.g.*, *Iniguez v. Sec'y of Health & Human Servs.*, No. 18-1537V, 2023 WL 3729843, at *4–6 (Fed. Cl. Spec. Mstr. May 30, 2023) (reducing Ms. Roquemore's nearly six-figure fee for a case that settled for $10,000.00 by 15% for lack of billing judgment); *Sanchez v. Sec'y of Health & Human Servs.*, No. 11-685V, 2021 WL 6211169, at *12 (Fed Cl. Spec. Mstr. Dec. 8, 2021 (noting excessive time spent on certain tasks and time spent on junior-level work billed at full hourly rate); *D.G. v. Sec'y of Health & Human Servs.*, No. 11-577V, 2020 WL 3265015, at *4 (Fed. Cl. Spec. Mstr. May 22, 2020 (explaining that counsel's performance contributed to " 'perplexing' twists and turns" in the case and that "the case need not have generated the high fees and costs that it has over the lengthy period it was litigated"); *J. T. v. Sec'y of Health & Hum. Servs.*, No. 12-618V, 2018 WL 4623163, at *6 (Fed. Cl. Apr. 20, 2018) (finding that Ms. Roquemore billed for an excessive amount of time to complete several tasks); *D.S. v. Sec'y of Health & Human Servs.*, No. 10-77V, 2017 WL 6397826, at 3–5 (Fed. Cl. Spec. Mstr. Nov. 20, 2017) (reducing fees by 10% due to excessive client and interoffice communications, duplicative billing, and time spent on administrative tasks); *Sanchez v. Sec'y of*

---

[4] Determined by: (Oct. 2023 hrs. billed (4.5) + Nov. 2023 hrs. billed (0.8) + Dec. 2023 hrs. billed (0.7)) x ($475 - $445) = $168.00. ECF No. 33-2 at 23 – 27.

*Health & Hum. Servs.*, No. 11-685V, 2016 WL 909186, at *9 (Fed. Cl. Spec. Mstr. Feb. 17, 2016) (reducing Ms. Roquemore's billable hours for excessive billing); *Brown v. Sec'y of Health & Hum. Servs.*, No 09-426V, 2013 WL 1790212, at *3 (Fed. Cl. Spec. Mstr. Apr. 8, 2013) (finding that some of the hours billed by Ms. Roquemore were excessive and unreasonable).

These kinds of billing practices are readily evident in the invoices submitted in connection with this fee motion. For example, Ms. Roquemore billed a little more than twenty-six hours for talking and emailing with her client before filing the Petition. ECF No. 33-2 at 1–12. On September 1, 2021, she billed one hour for reviewing an email from the Petitioner. *See id.* at 1. Further, she billed the Petitioner her full hourly rate for discussing with her paralegal Petitioner's retainer, postage, and litigation expenses. *See id.* at 3–4.

Overall, this is not a claim that should have been pursued, even if there was some objective support for it (hitched to a causation theory specific to T1DM that had not previously been evaluated). The fact that an injury occurs in the wake of a vaccination does not mean the vaccine caused it, or could even be *preponderantly* shown to have caused it. And counsel had over a year pre-filing to research the theory; the exceedingly low likelihood that Petitioner could prove the claim after briefing (which identified no new scientific thinking on the topic) could have been ascertained far sooner. Nor does it appear from the fees invoice that counsel undertook any effort not to charge for every hour she billed to the matter—despite my warning to take care in what was submitted. *Bohannon*, 2025 WL 413454, at n. 24. ***This matter should not have required more than $100,000.00 in attorney billed time to litigate.***

Under such circumstances, special masters have the discretion to apply an across-the-board percentage cut, rather than identify line-by-line issues in the billing invoices. *Iniguez*, 2023 WL 3729843, at *2. Here, I deem it appropriate, given counsel's history of overbilling and apparent comfort with continuing to do so, even in the context of clearly-untenable claims like the present matter, to apply a percentage reduction of ***thirty percent*** to the fees billed. This results in a further reduction of **$33,526.41** in Ms. Roquemore's fees.[5] Counsel can expect even more dramatic reductions in the future if similar lack of billing judgment is displayed in other cases.

### III.   Calculation of Attorney Costs

Just as they are required to establish the reasonableness of requested fees, petitioners must also demonstrate that requested litigation costs are reasonable. *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002): *Perreira v. Sec'y of Health & Hum. Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Reasonable costs include the costs of obtaining medical records and expert time incurred while working on a case. *Fester v. Sec'y of Health & Hum. Servs.*, No. 10-243V, 2013 WL 5367670, at *16 (Fed. Cl. Spec. Mstr. Aug. 27, 2013). When petitioners fail to substantiate a cost item, such as

---

[5] Determined by: $111,754.70 x 0.3 = $33,526.41

by not providing appropriate documentation to explain the basis for a particular cost, special masters have refrained from paying the cost at issue. *See, e.g.*, *Gardner-Cook v. Sec'y of Health & Hum. Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005).

Petitioner seeks Petitioner requests $10,649.67 in outstanding costs, which includes $8,300.00 in Dr. Alexrod's expert fees, $402.00 for filing the Petition, and $1,947.67 for medical records, postage fees, copying costs, and other miscellaneous litigation expenses. ECF Nos. 33-4 – 33-6. These costs are typical in the Vaccine Program and thus eligible for reimbursement. Dr. Alexrod's costs of $400 per hour is also consistent with what he has been awarded before in the program as well. *See, e.g., Luna v. Sec'y of Health & Hum. Servs.,* No. 19-1843V, 2025 WL 1836710, at *6 (Fed. Cl. June 11, 2025). While his report was not at all persuasive, the cost of it (authored in support of a flimsy, albeit novel, causation theory) was reasonable under the circumstances (especially in comparison to amounts requested for counsel's work). Petitioner's costs shall therefore be awarded in full without reduction.

## CONCLUSION

Based on the foregoing, and in the exercise of the discretion afforded to me in determining the propriety of a final fees award, I **GRANT** Petitioner's Motions for Attorney's Fees and Costs, awarding a total amount of **$88,709.96** (reflecting $78,060.29 in fees[6], plus $10,649.67 in costs) to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[7]

**IT IS SO ORDERED**.

/s/ Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[6] Determined by: $111,754.70 – ($168 + $33,694.41) = $78,060.29.

[7] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.